# EXHIBIT A

ELECTRONICALLY FILED
2024 Apr 12 4:25 PM
CLERK OF COURT - CIRCUIT

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

NAKIA HARRIS, individually as the natural mother
and Next of Kin for the wrongful death beneficiaries
of JA STEVENS, Deceased,

      Plaintiff,

vs.

      Docket No.:
      Div.:
      JURY DEMANDED

ABBOTT LABORATORIES, INC.
d/b/a MEAD JOHNSON & COMPANY, LLC,
a/k/a MEAD JOHNSON NUTRITION COMPANY,

      Defendants,

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

This action arises out of the catastrophic and preventable death of a newborn baby who died due to a horrific and deadly disease caused and/or substantially contributed to by cow's-milk-based infant formula and/or fortifier. Necrotizing Enterocolitis (hereinafter "NEC") is a deadly intestinal disease characterized by inflammation and injury of the gut wall barrier that may advance to necrosis and perforation of the gut. Advanced cases of NEC may lead to surgery and to death. Significantly higher rates of NEC have been found in premature or preterm babies with low birth rates who are fed cow's milk-based formula or fortifier products. The companies who manufacture these products often intentionally mislabel and misrepresent the contents of the products both to the public at-large and to the health care community, passing off these deadly products as something like or even superior to human breast milk. Tragically, baby Ja Stevens (hereinafter "Baby Stevens"), who was premature at birth, was fed these cow's milk-based products, developed NEC, and died shortly thereafter.

Plaintiff, Nakia Harris, Individually and as Personal Representative for the Wrongful Death Beneficiaries of Baby Stevens, brings this cause of action against Defendants for claims arising from the direct and proximate result of Defendants' negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, failure to warn, and/or sale of the Defendants' cow's milk-based products (hereinafter "Cow's milk-based Formula," "Cow's milk-based Fortifier," or collectively "Cow's Milk-Based Products").

## GENERAL ALLEGATIONS

Plaintiff, Nakia Harris, Individually and as Personal Representative for the Wrongful Death Beneficiaries of Baby Stevens (hereinafter "Plaintiff"), by and through the undersigned counsel, brings this Complaint against Defendants Abbott Laboratories and Mead Johnson & Company, LLC, and upon information and belief and based upon the investigation of counsel to date, would set forth as grounds the following:

## JURISDICTION AND VENUE

1.      Plaintiff, Nakia Harris, is the mother and natural guardian of Baby Stevens and is authorized to bring this action on behalf of her deceased son.

2.      This Court has jurisdiction over the subject matter of this case.

3.      This Court has personal jurisdiction over Defendants because Defendants marketed, promoted, distributed, and/or sold its Cow's Milk-Based Products in the State of Tennessee, and Defendants have sufficient minimum contacts with this state and/or sufficiently avails itself of the markets in the state through its promotion, sales, distribution, and marketing within this state to render exercise of jurisdiction by this Court permissible.

2

4.      Venue of this action is proper in this Court because a substantial part of the events or omissions giving rise to this action occurred in Memphis, Shelby County, Tennessee.

5.      This case is filed within the time allowed by law.

## PLAINTIFF

6.      Baby Stevens was born prematurely at Saint Francis Hospital in Memphis, Shelby County, Tennessee, on or about April 12, 2023, and transferred to the Newborn Intensive Care Unit ("NICU") at Regional One Health.  He died on or about April 29, 2024, after developing NEC.  Baby Stevens developed NEC after being fed Enfamil Milk-Based Products while in the NICU at Regional One Health in Memphis, Shelby County, Tennessee.  At all times material hereto, Baby Stevens was domiciled in and a citizen of the State of Tennessee.

7.      Plaintiff, Nakia Harris, the mother of Baby Stevens (hereinafter "Baby Stevens' Mother"), is domiciled in and a citizen of State of Tennessee, and resides in Shelby County, Tennessee.  Baby Stevens' Mother brings this action for the wrongful death of Baby Stevens, on behalf of all Wrongful Death Beneficiaries.

## DEFENDANT

8.      Defendant, Abbott Laboratories and Mead Johnson & Company, LLC (collectively "Abbott" or "Defendants") were at all times material hereto and are now corporations duly organized, incorporated, and existing under the laws of the States of Illinois and Delaware. Defendants manufacture, design, formulate, prepare, test, provide instructions for, market, label, package, sell, and/or places into the stream of commerce in all fifty (50) states, including Tennessee, premature infant formula and premature infant milk fortifier under the Enfamil brand name.

3

9.     Defendants advertise that it provides the "#1 Formula Brand, Backed by Science" and claims to have "over 90 years of innovations" in infant formula.

## FACTUAL ALLEGATIONS

### The Science and Scope of the Problem

10.     According to the World Health Organization ("WHO"), babies born prematurely, or "preterm," are defined as being born alive before 37 weeks of pregnancy are completed, like Baby Stevens.  The WHO estimates that approximately 15 million babies are born prematurely every year and that this number is rising.

11.     Nutrition for preterm babies, especially those who have a low birth weight (under 1500 grams) or extremely low birth weight (under 1000 grams), are significantly important.  Since the United States ranks in the top ten countries in the world with the greatest number of preterm births, the market of infant formula and fortifiers is particular vibrant.

12.     Science and research have advanced in recent years confirming strong links between cow's milk-based products and NEC causing and/or substantially contributing to death in preterm and severely preterm, low-weight infants, along with many other health complications and long-term risks to these babies.  Additionally, advances in science have created alternative fortifiers that are derived from human milk and non-cow's milk-based products; however, the manufacturers of the Cow's Milk-Based Products continue to promote and sell the Cow's Milk-Based Products' versions.

13.     As far back as 1990, a prospective, multicenter study on 926 preterm infants found that NEC was **six to ten times more** common in exclusively formula-fed babies than in those fed breast milk alone and **three times more common** than in those who received formula plus breast milk.  The study also found that NEC was rare in babies born

at more than 30 weeks' gestation whose diet included breast milk but was **20 times more common** in those fed cow's milk-based formula only. A. Lucas, T. Cole, *Breast Milk and Necrotizing Enterocolitis,* LANCET, 336: 1519-1523 (1990) (emphasis added).

14.    A study published in 2009 evaluated the health benefits of an exclusively human milk-based diet as compared to a diet with both human milk and cow's milk-based products in extremely premature infants.  The results show that preterm babies fed an exclusively human milk-based diet were **90% less likely** to develop surgical NEC as compared to a diet that included some cow's milk-based products. S. Sullivan, *et al, An exclusively Human Milk-Based Diet is Associated with a Lower Rate of Necrotizing Enterocolitis than a Diet of Human Milk and Bovine Milk-Based Products,* JOURNAL OF PEDIATRICS, 156: 562-7 (2010) (emphasis added).

15.    In 2011, the U.S. Surgeon General published a report titled, "The Surgeon General's Call to Action to Support Breastfeeding." In it, the Surgeon General warned that "for vulnerable premature infants, **formula feeding is associated with higher rates** of necrotizing enterocolitis (NEC). "U.S. Dep't of Health & Human Serv., Off. of Surgeon Gen., "The Surgeon General's Call to Action to Support Breastfeeding," p.1, (2011) (emphasis added).  This same report stated that premature infants who are not breast-fed are **138% more likely** to develop NEC. *Id.*

16.    In 2012, The American Academy of Pediatrics issued a policy statement that all premature infants should be fed an exclusive human milk diet because of the risk of NEC associated with the consumption of Cow's Milk-Based Products.  The Academy stated that "[t]he potent benefits of human milk are such that all preterm infants should receive human milk...If the mother's own milk is unavailable...pasteurized donor milk

should be used." *Breastfeeding and the Use of Human Milk,* PEDIATRICS, 129:e827-e841(2012).

17.     Further, a study published in 2013 showed that all 104 premature infants participating in the study receiving an exclusive human-milk based diet exceeded targeted growth standards and length and weight and head circumference gain.  The authors concluded that "this study provides data showing that **infants can achieve and mostly exceed targeted growth standards when receiving an exclusive human milk-based diet.**" A. Hair, *et al, Human Milk Feeding Supports Adequate Growth in Infants ≤1250 Grams Birthweight* BMC RESEARCH NOTES, 6:459 (2013) (emphasis added). Thus, inadequate growth was proven to be a poor excuse for feeding Cow's Milk-Based Formula, but the practice has largely continued due to extensive and aggressive marketing campaigns conducted by infant formula such as the Defendants.

18.     Another study published in 2013 reported the first randomized trial in extremely premature infants of exclusive human milk versus preterm cow's milk-based formula.  The study found a **significantly higher rate** of surgical NEC in infants receiving the cow's milk-based preterm formula and supported the use of exclusive human milk diet to nourish extremely preterm infants in the NICU. E.A. Cristofalo, *et al, Randomized Trial in Extremely Preterm Infants,* J PEDIATR, 163(6):1592-1595 (2013)(emphasis added).

19.     In another study published in 2014, it was reported that NEC is "a devastating disease of premature infants and is associated with **significant morbidity and mortality.**  While the pathogenesis of NEC remains incompletely understood, it is well established that the risk is increased by the administration of infant formula and decreased by the administration of breast milk." Misty Good, *et al., Evidence Based*

*Feeding Strategies Before and after the Development of Necrotizing Enterocolitis,* EXPERT REV. CLIN. IMMUNOL., 10(7):875-884 (2014 July) (emphasis added). The same study found that NEC "is the **most frequent and lethal gastrointestinal disorder** affecting preterm infants and is characterized by intestinal barrier disruption leading to intestinal necrosis, multi-system organ failure and death. *Id.* The study noted that "NEC affects 7-12% of preterm infants weighing less than 1500 grams, and the frequency of disease appears to be either stable or rising in several studies. *Id.* The typical patient who develops NEC is a premature infant who displays a rapid progression from mild feeding intolerance to systemic sepsis, and **up to 30% of infants will die from this disease."** *Id.* Advances in formula development have made it possible to prevent necrotizing enterocolitis, and the "exclusive use of human breast milk is recommended for all preterm infants and is associated with a significant decrease in the incidence of NEC." *Id.*

20.    Yet in another study published in 2014 it was reported that an exclusive human milk diet, devoid of Cow's Milk-Based Products, was associated with "lower mortality and morbidity" in extremely preterm infants without compromising growth and should be considered as an approach to nutritional care of these infants. Steven Abrams, *et al., Greater Mortality and Morbidity in Extremely Preterm Infants Fed a Diet Containing Cow Milk Protein Products,* BREASTFEEDING MEDICINE, 9(6):281-286 (2014).

21.    In 2016, a large study supported previous findings that an exclusive human milk diet in extreme preterm infants dramatically decreased the incidence of both medical and surgical NEC. This was the first study to compare rates of NEC after a feeding protocol implementation at multiple institutions and years of follow-up using an exclusive

human milk diet.  The authors concluded that the use of an **exclusive human milk diet is associated with "significant benefits"** for extremely preterm infants and while evaluating the benefits of using an exclusive human milk-based protocol, "it appears that there were **no feeding-related adverse outcomes.**" Hair, *et al., Beyond Necrotizing Enterocolitis Prevention: Improving Outcomes with an Exclusive Human Milk Based Diet,* BREASTFEEDING MEDICINE, 11-2 (2016) (emphasis added),

22.     A publication by the American Society for Nutrition, in 2017, noted that human milk has "been acknowledged as the best source of nutrition for preterm infants and those at risk for NEC."  The study compared the results from two randomized clinical trials on preterm infants with severely low weight (between 500 and 1250 grams at birth) and compared the effect of cow's milk-based preterm infant formula to human milk as to the rate of NEC.  Both trials found that an **exclusive human milk diet resulted in a much lower incidence of NEC**.  While the study noted that **cow's milk-based produces significantly increase the risk of NEC and death**, the study also noted the **"exponential" health care costs** associated with NEC and noted data from the U.S.  From 2011-2012, the cost of NEC is $180,000 to $198,000 per infant and nearly doubles to $313,000 per infant for surgically treated NEC.  Further, NEC survivors accrue substantially higher outpatient costs.  Jocelyn Shulhan, *et al., Current Knowledge of Necrotizing Enterocolitis in Preterm Infants and the Impact of Different Types of Enteral Nutrition Products,* ASN ADV. NUTR., 8(1):80-91 (2017) (emphasis added).

23.     The WHO and United Nation's International Children's Emergency Fund (UNICEF) held a meeting more than two decades ago to address concerns over the marketing of breast-milk substitutes. The WHO director concluded the meeting with the following statement, **"In my opinion, the campaign against bottle-feed**

8

advertising is unbelievably more important than the fight against smoking advertisement." Jules Law, *The Politics of Breastfeeding Assessing Risk, Dividing Labor, JSTOR SIGNS,* vol. 25, no. 2:407-50 (2000) (emphasis added).

24.     Recognizing the abuse and dangers of the marketing of infant formula, in 1981, the World Health Assembly ("WHA"), the decision-making body of the world's Member States, developed the International Code of Marketing of Breast-Milk Substitutes ("the Code"), which required companies to acknowledge the superiority of breast milk and outlawed any advertising or promotion of breast milk substitutes to the general public.  Pursuant to Article 5.1 of the Code, advertising of breast-milk substitutes is specifically prohibited: **"There should be no advertising or other form of promotion to the general public.**[of breast milk substitutes]."(emphasis added).  In Article 5.2, the Code states that "manufacturers and distributors should not provide, **directly or indirectly**, to pregnant women, mothers or member of their families, samples of products within the scope of this Code."  In addition, the Code expressly prohibits, "point-of-sale advertising, giving of samples, or any other promotion device to induce sales directly to the consumer at the retail level, such as special displays, discount coupons, premiums, special sales..."*See* Int'l Code of Marketing Breast-Milk Substitutes, May 21, 1981, WHA 34/1981/REC/2. Art.5.3.

25.     The World Health Organization's 2018 Status Report on this issue noted that "despite ample evidence of the benefits of exclusive and continued breastfeeding for their children, women, and society, far too few children are breastfed as recommended." The Status Report states that **"a major factor undermining efforts to improve breastfeeding rates is continued and aggressive marketing of breast-milk substitutes,"** noting that in 2014, the global sales of breast-milk substitutes amounted

9

to **US $44.8 billion** and "is expected to rise to **US $70.6 billion** by 2019." *Marketing of Breast-Milk Substitutes: Nat'l Implementation of the Int'l Code, Status Report 2018.* Geneva: World Health Org, 2018, p.21 (emphasis added).

26.      Recognizing a shift in the medical community towards and exclusive human-based diet for preterm infants, the Defendants began heavily promoting "human milk fortifiers," a name which misleadingly suggests that the product is derived from human milk, instead of being derived from Cow's Milk.

27.      The Defendants designed competing, systematic, powerful, and misleading marketing campaigns to persuade physicians and parents to believe that: (1) Cow's Milk-based formula and fortifiers are safe; (2) Cow's Milk-based Products are equal, or even superior, substitutes to breast milk, and (3) physicians consider their Cow's Milk-Based Products a first choice.  Similarly, the Defendants market their products for preterm infants as necessary for growth, and perfectly safe for preterm infants, despite knowing of the extreme risks posed by Cow's Milk-Based Products and failing to warn of the deadly disease of NEC and risk of death.

28.      Thus, despite the existence of alternative and safe human milk-based fortifiers, the Defendants continue to market and/or sell the Cow's Milk-Based Products under the guise of being a safe product for newborns and despite knowing the significant health risk posed by ingesting these products, especially to preterm, low weight infants like Baby Stevens.

**The Inadequate Warnings**

29.      Defendants promote the use of its preterm infant Cow's Milk-Based Products to parents, physicians, hospitals, and medical providers as safe products that are specifically needed by preterm infants for adequate growth.

10

30.     Despite the knowledge of the significant health risks posed to preterm infants ingesting the Cow's Milk-Based Products, including the significant risk of NEC and death, Defendants did not warn parents or medical providers of the risk of NEC in preterm infants, nor did Defendants provide any instructions or guidance on how to properly use its Cow's Milk-Based Products so as to lower the risk to avoid NEC or death.

31.     In fact, Defendants did not provide any warning in its labeling, websites, or marketing that warns that its Cow's Milk-Based Products exponentially increase the risk of NEC and death in preterm infants, or that human breast milk, donor breast milk, and human breast milk-based formulas and fortifiers are much safer for preterm babies than its Cow's Milk-Based Products.

**Baby Stevens and the Dangerous, Defective Products**

32.     Baby Stevens was born prematurely at Saint Francis Hospital in Memphis, Shelby County, Tennessee, on or about April 12, 2023.

33.     After birth, Baby Stevens was sent to the NICU at Regional One Health in Memphis, Shelby County, Tennessee.

34.     Following his birth, Baby Stevens' Mother successfully pumped her own breast milk for her baby's nutrition.

35.     Upon information and belief, Enfamil formula made up a significant portion of Baby Steven's diet between April 12, 2023, and April 21, 2023.

36.     On or before April 20, 2023, Baby Stevens was noted to have symptoms suggestive of NEC, including feeding intolerance, vomiting and abdominal distention.

37.     On or before April 21, 2023, Baby Stevens developed sever metabolic acidosis with a presumed diagnosis of NEC.

11

38.    Baby Stevens was transferred to Methodist Le Bonheur Children's Hospital on or about April 22, 2023, and thereafter died tragically due to NEC on April 29, 2023.

39.    At the time of his death, Baby Stevens parents were unaware of the fact that the Defendants' Cow's Milk-Based Products fed to Baby Stevens caused or substantially contributed to his developments of NEC and ultimately to his death.

**COUNT 1:    STRICT LIABILITY
DESIGN DEFECT**

40.    Plaintiff incorporates by reference each of the preceding paragraphs as is fully set forth herein.

41.    At all material times, Defendants were engaged in the sale, and/or marketing and/or design, and/or manufacture, and/or distribution of Cow's Milk-Based Products, which are defectively designed and/or unreasonably dangerous to consumers, including Baby Stevens.

42.    Defendants, as manufacturers, had a duty to hold the knowledge and skill of an expert and is obligated to keep abreast of any scientific discoveries and are presumed to know the result of all such advances.

43.    At all times material, the Cow's Milk-Based Products manufactured, distributed and/or sold by Defendants were in a defective and/or unreasonably dangerous condition at the time the products were placed in the stream of commerce for nutritional use for preterm infants.

44.    Defendants specifically marketed and created its Cow's Milk-Based Products for use as nutritional supplements for preterm infants, like Baby Stevens.

45.     Defendant Abbott's Cow's Milk-Based Products are expected to and do reach the user without substantial change affecting that defective and/or unreasonably dangerous condition.

46.     Prior to December 2019, Defendants were aware or should have been aware that their Cow's Milk-Based Products were not safe for use, as they were used, with nutrition or nutritional support in preterm infants, yet took no steps to prevent the use of these products in such situations.

47.     Defendants knew or should have known that the use of their Cow's Milk-Based Products with preterm infants was unreasonably dangerous in that its Cow's Milk-Based Products significantly increased the risk of NEC and death.

48.     Furthermore, scientific data and well-researched studies have concluded that the Cow's Milk-Based Products of the Defendants carried unreasonable risks of NEC and death, which far outweighed the products' benefits to preterm infants like Baby Stevens.

49.     The products were defectively manufactured and/or designed and/or unreasonably dangerous, including, but not limited to the following particulars:

a.      The products did not perform as safely as an ordinary consumer would expect when used in the intended or reasonably foreseeable manner, such that the use of Cow's Milk-Based Products as nutrition or nutritional supplements in preterm infants significantly increased the risk of NEC and death;

b.      The products contained hidden and dangerous design defects and were not reasonably safe as intended to be used, subjecting preterm infants, such as Baby Stevens, to risks of serious bodily injury and death;

13

c.   The products failed to meet the legitimate, commonly held, minimum safety expectations of that product when used in an intended or reasonably foreseeable manner;

d.   Defendants failed to utilize economical and technically available safer design alternatives for preterm infant formula and fortifiers;

e.   The products were manifestly unreasonable in that the risk of harm so clearly exceeded the products' utility that a reasonable consumer, informed of those risks and utility, would not purchase the product;

f.   Defendants failed to adopt an adequate or sufficient quality control program; and/or

g.   Defendants failed to inspect or test its products with sufficient care.

50.   As a direct and proximate cause of the Cow's Milk-Based Products unreasonable dangerous condition, Baby Stevens suffered serious bodily injury, which resulted in his death.      WHEREFORE, Plaintiff, by and through undersigned counsel, demand judgment against Defendants for all applicable wrongful death damages, costs of this action, post-judgment interest, and trial by jury.

## COUNT II: NEGLIGENCE

51.   Plaintiff incorporates by reference each of the preceding paragraphs as is fully set forth herein.

52.   Defendants, as the manufacturers and/or sellers of Cow's Milk-Based Products, owed a duty to the consuming public in general, and Plaintiff in particular, to exercise reasonable care to design, test, manufacture, inspect, and distribute products free of unreasonable risk of harm to users and patients, when said product is used in its intended manner.

14

53.     Defendants, as manufacturers, had a duty to hold the knowledge and skill of an expert, and is obliged to keep abreast of any scientific discoveries and are presumed to know the result of all such advances.

54.     Defendants, directly or indirectly, negligently, and/or defectively made, created, manufactured, designed, assembled, tested, marketed and/or sold the subject Cow's Milk-Based Products.

55.     Defendants breached the duty owed to Plaintiff and acted negligently in its actions, including, but not limited to, the following:

a.      Designed the products such that there are latent and not obvious dangers for consumers and patients while the products are being used in a foreseeable and intended manner;

b.      The products contained hidden and dangerous design defects and were not reasonably safe as intended to be used, subjecting preterm infants to risks of serious bodily injury and death in that the products' design and/or manufacture amounted to and/or resulted in a defect failure mode of the products;

c.      Failing to collect data to determine if its products were safe for preterm infants;

d.      Failing to collect data to determine when and how its products could be used safely;

e.      Failing to utilize the significant peer reviewed research to develop instructions;

f.      Failing to develop evidence-based guidelines or instructions to decrease the risk of its products causing NEC and death;

15

g.   Failing to provide evidence-based guidelines or instructions to decrease the risk of its products causing NEC and death;

h.   Failing to stop or deter its products from being fed to extremely preterm infants like Baby Stevens;

i.   Failing to provide evidence-based instructions or guidance on when or how a preterm infant should be transitioned to the products;

j.   Failing to continuously and vigorously study its cow's milk-based products in order to avoid NEC and death in premature infants;

k.   Failing to utilize economical and technically available safer manufacturing and/or design alternatives for the preterm infant formula and fortifier;

l.   Failing to adopt an adequate or sufficient quality control program; and/or

m.   Failing to inspect or test its products with sufficient care.

56.   Defendants knew or should have known that their products were to be used as nutrition and nutritional supplements with preterm infants, like Baby Stevens.

57.   Defendants knew or should have known that the use of their Cow's Milk-Based Products with preterm infants was unreasonably dangerous in that its Cow's Milk-Based Products significantly increased the risk of NEC and death.

58.   Furthermore, scientific data and well researched studies have concluded that the Cow's Milk-Based Products of the Defendants carried unreasonable risks of NEC and death, which far outweighed the products' benefits for premature infants like Baby Stevens.

59.   As a direct and proximate result of the negligence of Defendant, Baby Stevens suffered serious bodily injury, which resulted in his death.

16

WHEREFORE, Plaintiff, by and through undersigned counsel, demands judgment against Defendants for all applicable wrongful death damages, costs of this action, post-judgment interest, and trial by jury.

## COUNT III - STRICT LIABILITY
## FAILURE TO WARN

60.     Plaintiff incorporates by reference each of the preceding paragraphs as is fully set forth herein.

61.     Defendants, as the manufacturers and/or sellers of Cow's Milk-Based Products, owed a duty to the consuming public in general, and Plaintiff in particular, to properly warn and provide adequate warnings or instructions about the dangers and risks associated with the use of Cow's Milk-Based Products with preterm infants, specifically including but not limited to the risk of NEC and death.

62.     Defendants, as the manufacturers and/or sellers of Cow's Milk Product, were unreasonable in relying upon any information, including physicians, other health care providers or health care staff, to fully warn the end user of the hidden dangers and risks in its Cow's Milk-Based Products, as the magnitude of the risk involved in using Defendant's Cow's Milk-Based Products with preterm infants is significant and involves the real danger of serious bodily injury and death.

63.     Defendants, as the manufacturers and/or sellers of Cow's Milk Products, owed a duty to fully warn and instruct any intermediary, including physicians, other health care provides or health care staff, of the significant dangers of its Cow's Milk-Based Products.

64.     Defendants owed a duty to provide warnings and instructions on their Cow's Milk-Based Products marketed and/or sold for use with preterm infants that adequately

17

communicated information on the dangers and safe use of the product to health care providers and staff using these products in a NICU, taking into account the characteristics of, and the ordinary knowledge common to, such prescribing health care providers and administering health care staff and to specifically warn of the risks and danger associated with the use of Cow's Milk-Based Products with preterm infants, specifically including but not limited to the risk of NEC and death.

65.     Rather than provide adequate warnings, Defendants developed relationships which included incentives and financial gain to health care providers and facilities for using its Cow's Milk-Based Products within the NICU, such that health care providers and facilities had an incentive to withhold any instructions and/or warnings from the end user.

66.     In addition and/or in the alternative, if healthcare providers and health care staff had been properly instructed and warned of the risks associated with the use of Cow's Milk-Based Products with preterm infants, they would have not used such a dangerous product.

67.     Defendants, as manufacturers, had a duty to hold the knowledge and skill of an expert and is obliged to keep abreast of any scientific discoveries and are presumed to know the result of all such advances.

68.     Defendants, through their own testing and studies, consultants and experts, and/or knowledge of the scientific literature, as more specifically set forth in **The Science and Scope of the Problem** Section knew of the significant risk of NEC with preterm infants and death.

69.     Defendants, through their knowledge, review, and survey of the scientific literature, as detailed in **The Science and Scope of the Problem** Section, knew that

18

the use of Cow's Milk-Based Products with preterm infants could cause severe injury, including but not limited to NEC and death.

70.     Defendants breached the foregoing duties and failed to provide proper warnings and/or instructions of its Cow's Milk-Based Products, including but not limited to the following acts:

a.      Providing **no warnings** regarding the risk of NEC and death;

b.      Providing inadequate labeling that failed to warn of the risks of use of Cow's Milk-Based Products with preterm infants, including but not limited to NEC;

c.      Failed to provide proper instructions or guidelines or studies, or data on when and how to feed its products to preterm infants to decrease the risk of NEC and/or death;

d.      Failed to insert a warning or instruction that parents needed to be provided an informed choice between the safety of human milk versus the dangers of the Defendant's Cow's Milk-Based Products;

e.      Failed to provide instructions to consumers and health care providers that the Defendant's products carried a significant risk that its Cow's Milk-Based Products exponentially increased their baby's risk of developing NEC and death;

f.      The warnings and instructions were severely inadequate, vague, confusing, and provide a false sense of security in that they warn and instruct on certain conditions, but do not warn that the use of Cow's Milk-Based Products significantly increases the risk of NEC and death, and they failed to provide any details on how to avoid such harm;

19

g.    Failed to contain a large and prominent "black box" type warning that its Cow's Milk-Based Products are known to significantly increase the risk of NEC and death when compared to Human Milk in preterm infants;

h.    Failed to provide well-researched and well-established studies that linked its Cow's Milk-Based Products to NEC and death in preterm infants;

i.    Failed to cite or utilize current up-to-date medical data on the proper and safe use of its products;

j.    Failed to otherwise warn physicians, and healthcare providers of the extreme risks associated with feeding preterm infants Cow's Milk-Based Products;

k.    Failed to send out "Dear Dr." letters warning of the risks of NEC and death and the current scientific research and data to better guide the hospitals and physicians to better care for the extremely preterm infants;

l.    Failed to advise physicians and healthcare providers that Cow's Milk-Based Products are not necessary to achieve growth and nutritional targets for preterm infants; and/or

m.    Failed to contain sufficient instructions and warnings on the Cow's Milk-Based Products such that health care providers and health care staff were not properly warned of the dangers of NEC with use of Cow's Milk-Based Products and preterm infants.

71.    As a direct and proximate result of Defendants' failure to warn, Baby Stevens suffered serious bodily injury, which resulted in his death.

WHEREFORE, Plaintiff, by and through undersigned counsel, demands judgment against Defendants for all applicable wrongful death damages, costs of this action, post-judgment interest, and trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.     For compensatory damages in an amount to be proven at trial;

2.     For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, loss of consortium, and other non-economic losses sustained as a result of Defendants' conduct;

3.     For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

4.     For interest as permitted by law; and

5.     For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Respectfully submitted,

**BRYAN SMITH & ASSOCIATES**

*/s/ W. Bryan Smith*
W. Bryan Smith (TN BPR # 18230)
2670 Union Ave. Ext., Suite 701
Memphis, TN 38112
901-450-4990 Telephone
901-450-4898 Facsimile
bryan@bluffcitylawyers.com

*Counsel for Plaintiff*

21

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

ELECTRONICALLY FILED
2024 Apr 12 4:25 PM
CLERK OF COURT - CIRCUIT

## SUMMONS IN CIVIL ACTION

Docket No._____

◉ Lawsuit
◯ Divorce

Ad Damnum $ _____

| NAKIA HARRIS, individually as the natural mother and Next of Kin for the wrongful death beneficiaries of JA STEVENS, Deceased, | VS | ABBOTT LABORATORIES, INC. d/b/a MEAD JOHNSON & COMPANY, LLC, a/k/a MEAD JOHNSON NUTRITION COMPANY, |
|---|---|---|
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

Method of Service:

Mead Johnson & Company, LLC
  a/k/a Mead Johnson Nutrition Company
c/o Corporation Service Company, Registered Agent
2908 Poston Ave.
Nashville, TN 37203

◯ Certified Mail
◯ Shelby County Sheriff
◯ Commissioner of Insurance ($)
◯ Secretary of State ($)
◯ Other TN County Sheriff ($)
◉ Private Process Server
◯ Other

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and

serving a copy of your answer to the Complaint on        W. Bryan Smith                                          Plaintiff's

attorney, whose address is   Bryan Smith & Associates, 2670 Union Ave. Ext., Ste. 701, Memphis, TN 38112

telephone   901-450-4990                    within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JAMITA SWEARENGEN, Clerk / W. AARON HALL, Clerk and Master

TESTED AND ISSUED _____        By _____, D.C.

TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE <u>ONLY</u>, CALL (901) 222-2341

I, JAMITA SWEARENGEN / W. AARON HALL , Clerk of the Court, Shelby County, Tennessee, certify this to be a true and accurate copy as filed this

_____ 20__

JAMITA SWEARENGEN , Clerk / W. AARON HALL, Clerk and Master     By: _____, D.C.

## RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____

at _____

_____          By: _____
Signature of person accepting service                                    Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

                                                        By: _____
                                                             Sheriff or other authorized person to serve process



**The Shelby County, Tennessee Circuit Court**

**Case Style:**      NAKIA HARRIS VS ABBOTT LABORATORIES INC

**Case Number:**    CT-1538-24

**Type:**            SUMMONS ISSD TO MISC

Kelley Turner, DC

Electronically signed on 04/15/2024 07:28:30 AM

ELECTRONICALLY FILED
2024 Apr 12 4:25 PM
CLERK OF COURT - CIRCUIT

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No._____

◉ Lawsuit
◯ Divorce

Ad Damnum $ _____

| | | |
|---|---|---|
| NAKIA HARRIS, individually as the natural mother and Next of Kin for the wrongful death beneficiaries of JA STEVENS, Deceased, | VS | ABBOTT LABORATORIES, INC. d/b/a MEAD JOHNSON & COMPANY, LLC, a/k/a MEAD JOHNSON NUTRITION COMPANY, |
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

Mead Johnson & Company, LLC
   a/k/a Mead Johnson Nutrition Company
c/o Corporation Service Company, Registered Agent
2908 Poston Ave.
Nashville, TN 37203

Method of Service:
◯ Certified Mail
◯ Shelby County Sheriff
◯ Commissioner of Insurance ($)
◯ Secretary of State ($)
◯ Other TN County Sheriff ($)
◉ Private Process Server
◯ Other
($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and

serving a copy of your answer to the Complaint on  **W. Bryan Smith**  Plaintiff's

attorney, whose address is  **Bryan Smith & Associates, 2670 Union Ave. Ext., Ste. 701, Memphis, TN 38112**

telephone  **901-450-4990**  within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JAMITA SWEARENGEN, Clerk / W. AARON HALL, Clerk and Master

TESTED AND ISSUED _____     By _____, D.C.

### TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These items include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341

I, JAMITA SWEARENGEN / W. AARON HALL , Clerk of the Court, Shelby County, Tennessee, certify this to be a true and accurate copy as filed this

_____ 20__

JAMITA SWEARENGEN , Clerk / W. AARON HALL, Clerk and Master     By: _____, D.C.

RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____

at _____

_____                    By: _____
Signature of person accepting service                                    Sheriff or other authorized person to serve process

RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

                                                                                  By: _____
                                                                                          Sheriff or other authorized person to serve process



**The Shelby County, Tennessee Circuit Court**

**Case Style:**          NAKIA HARRIS VS ABBOTT LABORATORIES INC

**Case Number:**      CT-1538-24

**Type:**                    SUMMONS ISSD TO MISC

Kelley Turner, DC

Electronically signed on 04/15/2024 07:28:30 AM

(CIRCUIT/CHANCERY) COURT OF TENNESSEE
140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

ELECTRONICALLY FILED
2024 Apr 12 4:25 PM
CLERK OF COURT - CIRCUIT

## SUMMONS IN CIVIL ACTION

Docket No. CT-1538-24

◉ Lawsuit
◯ Divorce

Ad Damnum $ _____

| NAKIA HARRIS, individually as the natural mother and Next of Kin for the wrongful death beneficiaries of JA STEVENS, Deceased, | VS | ABBOTT LABORATORIES, INC. d/b/a MEAD JOHNSON & COMPANY, LLC, a/k/a MEAD JOHNSON NUTRITION COMPANY |
|---|---|---|

FILED
JUL 10 2024
CIRCUIT COURT CLERK
BY _____ D.C.

Plaintiff(s)

TO: (Name and Address of Defendant (One defendant per summons))

Method of Service:

| Mead Johnson & Company, LLC a/k/a Mead Johnson Nutrition Company c/o Corporation Service Company, Registered Agent 2908 Poston Ave. Nashville, TN 37203 | ◯ Certified Mail ◯ Shelby County Sheriff ◯ Commissioner of Insurance ($) ◯ Secretary of State ($) ◯ Other TN County Sheriff ($) ◉ Private Process Server ◯ Other |
|---|---|

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and

serving a copy of your answer to the Complaint on     W. Bryan Smith                                          Plaintiff's

attorney, whose address is   Bryan Smith & Associates, 2670 Union Ave. Ext., Ste. 701, Memphis, TN 38112

telephone  901-450-4990            within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JAMITA SWEARENGEN, Clerk / W. AARON HALL, Clerk and Master

TESTED AND ISSUED _____            By _____ , D.C.

TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341

I, JAMITA SWEARENGEN / W. AARON HALL, Clerk of the Court, Shelby County, Tennessee, certify this to be a true and accurate copy as filed this

_____ 20__

JAMITA SWEARENGEN, Clerk / W. AARON HALL, Clerk and Master     By: _____ , D.C.

## RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _01 st_ day of _June_ , 20 _24_ at _10:13_ A M. a copy of the summons

and a copy of the Complaint to the following Defendant _Mead Johnson & Company, LLC a/k/a Mead Johnson Nutrition Company_

at _2908 Poston Ave, Nashville, TN 37203_

_____    By: _Scott M. Nance_

Signature of person accepting service          Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____ , 20 _____ .

By: _____

Sheriff or other authorized person to serve process



**The Shelby County, Tennessee Circuit Court**

**Case Style:**      NAKIA HARRIS VS ABBOTT LABORATORIES INC

**Case Number:**     CT-1538-24

**Type:**            SUMMONS ISSD TO MISC

Kelley Turner, DC

Electronically signed on 04/15/2024 07:28:30 AM

Progressive Process Service

P.O. Box 343058 - Bartlett, TN 38184

Phone: 901-388-7113 - Email: progressivepps.process@gmail.com

# AFFIDAVIT OF SERVICE

CIRCUIT COURT

STATE OF TENNESSEE, COUNTY OF SHELBY

I, Scott Nance, being duly sworn deposes and says, I have been duly authorized to make service of the documents listed herein in the above titled case, I am over the age of eighteen years and am not a party to or otherwise interested in this matter

**Plaintiff:** Nakia Harris, individually as the natural mother and Next of Kin for the wrongful death beneficiaries of JA Stevens, Deceased

**Defendant:** Abbott Laboratories, Inc. d/b/a Mead Johnson & Company, LLC a/k/a Mead Johnson Nutrition Company

**DOCKET#:** CT-1538-24

**DOCUMENTS:** Summons & Plaintiff's Complaint and Jury Demand

**DATE OF SERVICE:** *6-21-2024*

**TIME SERVED:** *1013 Am*

**ADDRESS OF SERVICE:** 2908 Poston Ave, Nashville, TN 37203

**SERVED TO:** Mead Johnson & Company, LLC a/k/a Mead Johnson Nutrition Company c/o Corporation Service Company, by serving *Glenda Shepherd - Rep Agent*

I have served said document(s) in compliance with all the laws and the rules of the courts of the state in which it was issued.

Scott Nance, Private Process Server

Sworn and subscribed before me this date: *6-21-24*

My commission expires:



My Commission Expires
5/23/2028

ELECTRONICALLY FILED
2024 Jun 26 4:39 PM
CLERK OF COURT - CIRCUIT
2024 Apr 12 4:25 PM
CLERK OF COURT - CIRCUIT

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. CT-1538-24

- ⦿ Lawsuit
- ◯ Divorce

Ad Damnum $ _____

| | | |
|---|---|---|
| NAKIA HARRIS, individually as the natural mother and Next of Kin for the wrongful death beneficiaries of JA STEVENS, Deceased, | VS | ABBOTT LABORATORIES, INC. d/b/a MEAD JOHNSON & COMPANY, LLC, a/k/a MEAD JOHNSON NUTRITION COMPANY, |
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

Mead Johnson & Company, LLC
  a/k/a Mead Johnson Nutrition Company
c/o Corporation Service Company, Registered Agent
2908 Poston Ave.
Nashville, TN 37203

Method of Service:
- ◯ Certified Mail
- ◯ Shelby County Sheriff
- ◯ Commissioner of Insurance ($)
- ◯ Secretary of State ($)
- ◯ Other TN County Sheriff ($)
- ⦿ Private Process Server
- ◯ Other

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and

serving a copy of your answer to the Complaint on    W. Bryan Smith      Plaintiff's

attorney, whose address is    Bryan Smith & Associates, 2670 Union Ave. Ext., Ste. 701, Memphis, TN 38112

telephone   901-450-4990     within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JAMITA SWEARENGEN, Clerk / W. AARON HALL, Clerk and Master

TESTED AND ISSUED _____    By _____, D.C.

### TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341

I, JAMITA SWEARENGEN / W. AARON HALL, Clerk of the Court, Shelby County, Tennessee, certify this to be a true and accurate copy as filed this

_____ 20___

JAMITA SWEARENGEN, Clerk / W. AARON HALL, Clerk and Master    By _____, D.C.

RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _01 st_ day of _June_, 20 _24_ at _10:13 A_ M. a copy of the summons

and a copy of the Complaint to the following Defendant _Mead Johnson & Company, LLC a/k/a Mead_
_Johnson Nutrition Company_

at _2908 Poston Ave, Nashville, TN 37203_

_____
Signature of person accepting service

By: _Scott M. Nance_
_____
Sheriff or other authorized person to serve process

RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____day of _____, 20_____.

By: _____
Sheriff or other authorized person to serve process



**The Shelby County, Tennessee Circuit Court**

**Case Style:**      NAKIA HARRIS VS ABBOTT LABORATORIES INC

**Case Number:**    CT-1538-24

**Type:**            SUMMONS ISSD TO MISC

Kelley Turner, DC

Electronically signed on 04/15/2024 07:28:30 AM

Progressive Process Service

P.O. Box 343058 - Bartlett, TN 38184

Phone: 901-388-7113 - Email: progressivepps.process@gmail.com

# AFFIDAVIT OF SERVICE

CIRCUIT COURT

STATE OF TENNESSEE, COUNTY OF SHELBY

I, Scott Nance, being duly sworn deposes and says, I have been duly authorized to make service of the documents listed herein in the above titled case, I am over the age of eighteen years and am not a party to or otherwise interested in this matter

**Plaintiff**: Nakia Harris, individually as the natural mother and Next of Kin for the wrongful death beneficiaries of JA Stevens, Deceased

**Defendant**: Abbott Laboratories, Inc. d/b/a Mead Johnson & Company, LLC a/k/a Mead Johnson Nutrition Company

**DOCKET#**: CT-1538-24

**DOCUMENTS**: Summons & Plaintiff's Complaint and Jury Demand

**DATE OF SERVICE**: 6-21-2024

**TIME SERVED**: 1013 Am

**ADDRESS OF SERVICE**: 2908 Poston Ave, Nashville, TN 37203

**SERVED TO**: Mead Johnson & Company, LLC a/k/a Mead Johnson Nutrition Company c/o Corporation Service Company, by serving _Glenda Shepherd - Rep Agent_

I have served said document(s) in compliance with all the laws and the rules of the courts of the state in which it was issued.

Scott Nance, Private Process Server

Sworn and subscribed before me this date: 6-21-24

My commission expires:

My Commission Expires
5/23/2028

Vanessa McMahan



VANESSA MCMAHAN
STATE
OF
TENNESSEE
NOTARY
PUBLIC
ROBERTSON COUNTY

ELECTRONICALLY FILED
2024 Jun 27 11:50 AM
CLERK OF COURT - CIRCUIT
2024 Apr 12 4:25 PM
CLERK OF COURT - CIRCUIT

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. CT-1538-24

○ Lawsuit
○ Divorce

Ad Damnum $ _____

| | | |
|---|---|---|
| NAKIA HARRIS, individually as the natural mother and Next of Kin for the wrongful death beneficiaries of JA STEVENS, Deceased, | VS | ABBOTT LABORATORIES, INC. d/b/a MEAD JOHNSON & COMPANY, LLC, a/k/a MEAD JOHNSON NUTRITION COMPANY, |
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

Abbot Laboratories, Inc.
c/o CT Corporation System, Registered Agent
300 Montvue Rd.
Knoxville, TN 37919

Method of Service:
○ Certified Mail
○ Shelby County Sheriff
○ Commissioner of Insurance ($)
○ Secretary of State ($)
○ Other  TN County  Sheriff ($)
● Private Process Server
○ Other
($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and

serving a copy of your answer to the Complaint on   **W. Bryan Smith**                          Plaintiff's

attorney, whose address is   **Bryan Smith & Associates, 2670 Union Ave. Ext., Ste. 701, Memphis, TN 38112**

telephone  **901-450-4990**                within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JAMITA SWEARENGEN, Clerk / W. AARON HALL, Clerk  and  Master

TESTED AND ISSUED _____        By _____, D.C.

TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you  must file a written list, under oath, of the items you wish to claim as exempt  with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment  issued prior to the filing of the list. Certain items are automatically  exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS  WITH  DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341

I, JAMITA SWEARENGEN / W. AARON HALL ,  Clerk of the Court, Shelby County, Tennessee, certify  this  to be a true and accurate  copy  as filed this

_____ 20___

JAMITA SWEARENGEN , Clerk / W. AARON HALL, Clerk  and  Master        By: _____, D.C.

### RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT **I HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____13_____ day of _____June_____, 20_24_ at _9:30 A_ M. a copy of the summons

and a copy of the Complaint to the following Defendant _____Abbot Laboratories Inc_____

at _____CT corporation system_____

_____
Signature of person accepting service

By: _____Jennifer Scott_____
Sheriff or other authorized person to serve process

### RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT **I HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____day of _____, 20_____.

By: _____
Sheriff or other authorized person to serve process

Progressive Process Service

P.O. Box 343058 - Bartlett, TN 38184

Phone: 901-388-7113 - Email: progressivepps.process@gmail.com

# **AFFIDAVIT OF SERVICE**

CIRCUIT COURT

STATE OF TENNESSEE, COUNTY OF SHELBY

I, Jennifer Plott, being duly sworn deposes and says, I have been duly authorized to make service of the documents listed herein in the above titled case, I am over the age of eighteen years and am not a party to or otherwise interested in this matter

**Plaintiff:** Nakia Harris, individually as the natural mother and Next of Kin for the wrongful death beneficiaries of JA Stevens, Deceased

**Defendant:** Abbot Laboratories, Inc d/b/a Mead Johnson & Company, LLC, a/k/a Mead Johnson Nutrition Company

**DOCKET#:** CT-1538-24

**DOCUMENTS:** Summons & Plaintiff's Complaint and Jury Demand

**DATE OF SERVICE:** 6/13/24

**TIME SERVED:** 9:30A

**ADDRESS OF SERVICE:** 300 Montvue Road, Knoxville, TN 37919

**SERVED TO: Abbot Laboratories, Inc c/o CT Corporation System, RA, by serving Sam Sutton, CT Rep**

I have served said document(s) in compliance with all the laws of the State of Tennessee and the rules of the courts.



Jennifer Plott, Private Process Server

Sworn and subscribed before me this date: 6/13/24        My commission expires: 9/5/27

